UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIMBERLY J.  SWAN,

                          Plaintiff,

v.                                                                    7:10-CV-1334
                                                                      (GTS)
COMM'R OF SOC. SEC.,

                          Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

CONBOY, McKAY, BACHMAN & KENDALL, LLP        LAWRENCE D. HASSELER, ESQ.
  Counsel for Plaintiff
307 State Street
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMINISTRATION          SATHYA OUM, ESQ.
  Counsel for Defendants
26 Federal Plaza
New York, NY 10019

GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court, in this action for Supplemental Security Income ("SSI")

disability benefits filed by Kimberly J.  Swan ("Plaintiff") against the Commissioner of Social

Security ("Defendant"), are the parties' cross-motions for judgment on the pleadings.  (Dkt. Nos.

1, 11, 15.)  For the reasons set forth below, Plaintiff's motion is granted in part and denied in

part; Defendant's cross-motion is granted in part and denied in part; and this matter is remanded

to Defendant for further proceedings consistent with this Memorandum-Decision and Order.

I.       RELEVANT BACKGROUND

        A.       **Plaintiff's Claim and Medical History**

Generally, Plaintiff claims she is disabled and has been unable to work since September

2007 due to degenerative disc disease ("DDD") in her neck with radiation of pain and range of

motion limitations, DDD in her lumbosacral spine with pain radiation, internal derangement of

both knees, internal derangement of her left shoulder, status post-surgical rotator cuff repair in

her right shoulder, and carpal tunnel syndrome in her wrists.  (Dkt. No. 16, at 4 [Plf.'s Brief];

Dkt. No. 10 at 18 [attaching page "12" of Admin. Transcript (hereinafter cited as "T. at 12")].)

Plaintiff also claims that she suffers from the effects of alcoholism that has been in remission for

several years.  (T. at 12.)

       The parities do not dispute the basic medical evidence in this case.  (*Compare* Dkt. No.

16, at 4-8 [Plf.'s Brief] *with* Dkt. No. 18, at 2 [Def.'s Brief, generally adopting Plaintiff's

Statement of Facts].)  As a result, the Court will not recite Plaintiff's lengthy medical history in

this Memorandum-Decision and Order, which is intended primarily for the review of the parties.

Rather, the Court will only make the following brief comments about the medical evidence in

this case.

       The record contains four comprehensive medical evaluations of Plaintiff's alleged

disabilities that are at issue in this appeal.  Plaintiff's primary treating physician, Dr. Rebecca

Tam-Alberto, concluded in a report dated November 19, 2009, that Plaintiff is unable to work

because she cannot lift or carry any significant weight and that Plaintiff cannot sit, stand or walk

for more than an hour at a time, nor more than two hours in a given work day.  (T. at 537-38.)

Dr. Tam-Alberto made these clinical findings after a review of Plaintiff's medical records,

including examinations and MRIs performed by North Country Orthopaedic Group and other medical professionals. (*Id.*; *see also* Dkt. No. 16, at 8.)

Over the course of her application for SSI, Plaintiff was also evaluated by three consulting examiners. Dr. Kalyani Ganesh examined Plaintiff on August 14, 2007, and found no limitations in Plaintiff's ability to sit, stand, or walk and only minor limitations in Plaintiff's ability to lift, carry, push, or pull. (T. at 234.) Dr. Brij Sinha evaluated Plaintiff on May 12, 2008, and found that Plaintiff would have mild to moderate limitations on those activities. (*Id.* at 317.) Dr. Charles Mohes examined Plaintiff on August, 28, 2008, and concluded that Plaintiff would be able to do light clerical or counter work with lift limitations of 10-15 pounds and had the ability to sit and stand periodically, up to six hours a day. (*Id.* at 334.)

Familiarity with the remaining details of Plaintiff's medical history and the other factual allegations supporting Plaintiff's claim is assumed in this Memorandum-Decision and Order, which again is intended primarily for review by the parties.

### B.    Procedural History

Plaintiff filed her application for SSI benefits on April 16, 2008. (T. at 95.) In a report dated May 22, 2008, a disability examiner determined that Plaintiff was not disabled and denied her claim for benefits. (*Id.* at 46.) On July 9, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was done by video conference before ALJ John P. Ramos on November 20, 2009. (*Id.* at 23-44, 64.) ALJ Ramos issued his unfavorable decision on January 5, 2010. (*Id.* at 7-18.) In his decision, ALJ Ramos found as follows: (1) Plaintiff had not engaged in substantial gainful activity since the application date; (2) Plaintiff had severe impairments, specifically those impairments described in Part I.A. of the Memorandum-Decision

and Order; (3) Plaintiff does not have a "listed" impairment that would entitle her to a conclusive

finding of disability; (4) Plaintiff has the residual functional capacity to perform light work; and

(5) there are jobs in significant numbers in the national economy that Plaintiff can perform.  (*Id*.

at 12-17.)

Plaintiff filed a timely request for review of ALJ Ramos's decision with the Appeals

Council.  (*Id*. at 6.)  The Appeals Council denied Plaintiff's request for review on October 24,

2010.  (*Id*. at 1-5.)  Plaintiff subsequently commenced this action appealing ALJ Ramos's

decision on November 4, 2010.  (Dkt. No. 1.)

### C.    Plaintiff's Appeal

Generally, in support of her appeal, Plaintiff argues as follows: (1) Defendant

erroneously failed to find that Plaintiff's neck impairment meets the requirements under Listing

1.04(A), which would entitle Plaintiff to a conclusive finding that she is disabled; (2) Defendant

incorrectly failed to assign controlling weight, or in the alternative extra weight, to the medical

conclusions of Plaintiff's treating physician; (3) Defendant incorrectly calculated Plaintiff's

residual functional capacity; (4) Defendant failed to properly assess Plaintiff's subjective

allegations of pain and disabling symptoms; (5) Defendant misread significant evidence; and (6)

Defendant improperly used the Medical-Vocation guidelines to conclude there was substantial

work in the national economy that Plaintiff can perform.  (*See generally* Dkt. No. 16 [Plf.'s

Brief].)

Generally, in Defendant's response to Plaintiff's appeal, he argues as follows: (1) ALJ

Ramos properly found that Plaintiff's impairments do not meet the requirements under Listing

1.04(A); (2) ALJ Ramos properly evaluated the medical evidence in the record and accorded it

the appropriate weight when reaching his decision, including the evidence from Plaintiff's

treating physician; and (3) ALJ properly used the Medical-Vocational guidelines to conclude

that Plaintiff is not disabled..  (*See generally* Dkt. No. 18 [Def.'s Brief].)

## II.      RELEVANT LEGAL STANDARDS

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether

an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will

only be reversed if the correct legal standards were not applied, or it was not supported by

substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is

a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the

substantial evidence standard to uphold a finding of no disability creates an unacceptable risk

that a claimant will be deprived of the right to have her disability determination made according

to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v.*

*Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and

it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28

L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the

Commissioner's determination considerable deference, and may not substitute "its own

judgment for that of the [Commissioner], even if it might justifiably have reached a different

result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041

(2d Cir. 1984).

### B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen

v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations.  If the
> claimant has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age, education,
> and work experience; the [Commissioner] presumes that a claimant who is

> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform his past
> work.  Finally, if the claimant is unable to perform his past work, the
> [Commissioner] then determines whether there is other work which the
> claimant could perform.  Under the cases previously discussed, the
> claimant bears the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## III.    ANALYSIS

### A.    Whether ALJ Ramos Properly Concluded that Plaintiff Was Not Disabled Under Listing 1.04(A)

After carefully considering the matter, the Court answers this question in the affirmative,

generally for the reasons stated in Defendant's brief.  (Dkt. No. 18, at 4-8 [Def.'s Brief].)  The

Court would only add the following brief analysis.

Although ALJ Ramos's opinion does not provide his specific reasoning for his

conclusion that Plaintiff's impairment does not meet Listing 1.04(A), the Second Circuit has

upheld findings of ALJs in such cases where other portions of their decisions and the evidence

before them support their conclusions with substantial evidence.  *Berry*, 675 F.2d at 468

(affirming an unfavorable decision that lacked an express rationale because the record indicated

the ALJ's conclusion was supported by substantial evidence).  Therefore, if the medical evidence

in the record, along with findings based on that evidence in other parts of the decision, provides

substantial evidence for ALJ Ramos's conclusion that Plaintiff did not meet the requirements of

Listing 1.04(A), then his determination will be affirmed.

The elements that a claimant must show to receive a finding of disability under Listing

1.04(A) are as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,
> facet arthritis, veterbral fracture), resulting in compromise of the nerve
> root (including cauda equina) or the spinal cord.  With
>> A.  Evidence of nerve root compression characterized by neuro-
>> anatomic distribution of pain, limitation of motion of the spine,
>> motor loss (atrophy with associated muscle weakness or muscle
>> weakness) accompanied by sensory or reflex loss and, if there is
>> involvement of the lower back, positive straight-leg raising test
>> (sitting and supine). . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff and Defendant disagree on whether crowding of the thecal sac constitutes a compromise of the nerve root.  (*Compare* Dkt. No. 16, at 11 [Plf.'s Brief] *with* Dkt. No. 18, at 7 [Def.'s Brief].)  However, this issue is not dispositive; and the Court need not, and does not, reach a decision on whether crowding of the thecal sac is a sufficient compromise of the nerve root under Listing 1.04(A).

Even if ALJ Ramos concluded that crowding of the thecal sac is a compromise of the nerve root, there was sufficient evidence in the record for ALJ Ramos to conclude that Plaintiff's impairments lacked the required elements that must accompany the compromise pursuant to the regulations.  Specifically, ALJ Ramos found that Plaintiff has good strength in her extremities, without muscle atrophy or weakness, and has no significant limitation in her range of motion of the spine.[1]  (T. at 16.)  These conclusions are supported by the findings of Drs. Ganesh, Sinha, and Moehs.  (*Id*. at 233, 316-17, 334.)  Although Plaintiff cites other evidence in the record that purports to contradict ALJ Ramos's findings, there is nonetheless substantial evidence

---

[1]      Specifically, ALJ Ramos concluded that Plaintiff "has not experienced *any* significant limitation in her range of motion."  (T. at 16) (emphasis added).  The Court finds that this includes no significant limitation on the motion of her spine, as was noted in the reports of Drs. Ganesh, Sinha, and Moehs.  (*Id*. at 233, 316-17, 334.)

supporting ALJ Ramos's conclusion that Plaintiff's impairments do not include limitations of

motions of the spine or motor loss and thus do not meet the required elements under Listing

1.04(A).  (*See* Dkt. No. 16, at 11-12 [Plf.'s Brief].)

For these reasons, ALJ Ramos's conclusion that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals Listing 1.04(A) is affirmed.

> **B.      Whether ALJ Ramos Assigned Proper Weight to Dr. Tam-Alberto's Medical Conclusions**

After carefully considering the matter, the Court finds that ALJ Ramos properly

concluded that Dr. Tam-Alberto's conclusions were not entitled to controlling weight.  However,

the Court finds that ALJ Ramos failed to complete an "extra weight" analysis under the treating

physician's rule that would potentially alter his conclusions.

Under the "treating physician's rule," an ALJ must give controlling weight to the treating

physician's opinion when (1) the opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial

evidence in the record, such as opinions of other medical experts.  20 C.F.R. § 404.1527(d)(2);

*Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, No. 11-CV-

2907, 2012 WL 2096630, at *1 (2d Cir. June 12, 2012).

Here, ALJ Ramos correctly found that Dr. Tam-Alberto's conclusions were not

consistent with the findings of other physicians who had examined Plaintiff. (T. at 16-17.)  For

example, Dr. Tam-Alberto found that Plaintiff was unable to work because she could not lift or

carry any weight and that Plaintiff could not sit, stand or walk for more than an hour at a time or

more than two hours in a given work day.  (*Id.* at 537-38.)   However, Dr. Ganesh found no

limitations in Plaintiff's ability to sit, stand, or walk and only minor limitations in Plaintiff's

ability lift, carry, push, or pull.  (*Id*. at 234.)  Dr.  Sinha found that Plaintiff would have mild to

moderate limitations on those activities.  (*Id*. at 317.)  Dr.  Mohes found that Plaintiff would be

able to do light clerical or counter work with lift limitations of 10-15 pounds and had the ability

to sit and stand periodically, up to six hours a day.  (*Id*. at 334.)  Therefore, ALJ Ramos correctly

concluded that, because Dr. Tam-Alberto's opinion is not consistent with other substantial

evidence in the record (namely the conclusions by other physicians), her opinion is not entitled

to controlling weight.

ALJ Ramos also concluded that Dr. Tam-Alberto's assessment was not supported by her

own objective findings, to which Plaintiff objects in her brief.  (T. at 16; Dkt. No. 16, at 13-14.)

Because the inconsistency between Dr. Tam-Alberto's assessment and those of other physicians

who examined Plaintiff is sufficient enough grounds to deny controlling weight to Dr. Tam-

Alberto's opinion, the Court need not, and does not, address the question of whether ALJ Ramos

accurately concluded that Dr. Tam-Alberto's opinion is unsupported by her own objective

findings.

However, even when not entitled to controlling weight, the opinion of a treating

physician may be given extra weight under certain circumstances.  The factors an ALJ should

consider when determining the proper weight of a treating physicians opinion include the

following: (1) frequency of the examination and the length, nature and extent of the treatment

relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the

record as a whole; and (4) whether the opinion is from a specialist.  20 C.F.R. § 404.1527(d);

*Shaw v.  Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see also*, *Brogran-Dawley*, Slip Op. at 1.

Regulations require ALJs to set forth their reasons for the weight they assign to a treating

physician's opinion.  *Shaw*, 221 F.3d at 134.

As Plaintiff notes in her brief, it is not clear whether ALJ Ramos performed such an extra weight analysis. (Dkt. No. 16, at 15.) Although ALJ Ramos concludes that Dr. Tam-Alberto's opinion is entitled to "no significant weight," it is not apparent from his decision that he considered the extra weight factors. (T. at 16.) Given the relatively contradictory evidence in the record, it is possible that, if Dr. Tam-Alberto's opinion is given extra weight, it may change the calculation of Plaintiff's residual functional capacity. Although the Court recognizes that ALJ Ramos may have done such an analysis and still concluded that the findings of Dr. Tam-Alberto did not warrant extra weight, it is impossible for the Court to determine that from the record. Therefore, the claim will be remanded to Defendant to reconsider the weight assigned to Dr. Tam-Alberto's medical opinion.

For these reasons, Plaintiff's claim is remanded so that Defendant can perform an "extra weight" analysis for the medical conclusions of Dr. Tam-Alberto. If Defendant concludes that Dr. Tam-Alberto's opinion is entitled to extra weight, Defendant must recalculate Plaintiff's residual functional capacity and determine, with the new calculations, whether there are significant jobs in the national economy that Plaintiff can perform.

C.      **Whether ALJ Ramos Properly Considered the Medical Evidence When Calculating Plaintiff's Residual Functional Capacity**

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's brief. (Dkt. No. 18, at 9-17 [Def.'s Brief].) The Court would only add the following analysis.

In Points III through V of her brief, Plaintiff argues that Defendant erred in calculating her residual functional capacity. Although much of Plaintiff's brief is duplicative, Plaintiff argues, in general, that ALJ Ramos misread significant evidence and failed to properly assess

Plaintiff's subjective allegations of pain and disabling symptoms.  (Dkt. No.16, at 16-23.)

However, as discussed above in Part II.A. of this Memorandum-Decision and Order, the Court

must give ALJ Ramos's findings considerable deference on review.  ALJ Ramos clearly and

thoroughly explained his calculation of Plaintiff's residual functional capacity.  (T. 13-17.)  He

based his conclusions on medical evidence in the record, specifically and significantly on the

findings of Drs. Ganesh, Sinha, and Moes.  (*Id*.)  As noted above in Part III.A. of this

Memorandum-Decision and Order, even though Plaintiff can point to other evidence in the

record that purports to contradict ALJ Ramos's findings, that does not negate the fact that there

is still substantial evidence in the record supporting ALJ Ramos's calculation of Plaintiff's

residual functional capacity.

For these reasons, ALJ Ramos's calculation of Plaintiff's residual functional capacity is

affirmed because it is supported by substantial evidence in the record.  The Court notes,

however, that this calculation may change after the Defendant performs an extra weight analysis

of Dr. Tam-Alberto's opinion, pursuant to Part III.B. of this Memorandum-Decision and Order.

**D.      Whether ALJ Ramos Properly Applied the Medical-Vocational Guidelines**

After carefully considering the matter, the Court answers this question in the affirmative,

generally for the reasons stated in Defendant's Brief.  (Dkt. No. 18, at 17-18 [Def.'s Brief].)  The

Court would only add the following brief point.

Generally, Plaintiff argues in her brief that she has significant non-exertional

impairments and that, because the impairments are non-exertional, ALJ Ramos should have

consulted a vocational specialist and not relied on the Guidelines when determining whether

significant work exists in the national economy that Plaintiff can perform.  (Dkt. No. 18, at 23-

24.)  In support of this argument, Plaintiff cites *Pratts v. Chater*, which held that use of the

Guidelines is inappropriate "where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment. . . ." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996.)  However, the Second Circuit also held in *Pratts* that "[i]f the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate." *Pratts*, 94 F.3d at 39 (citing *Bapp v. Bowen*, 802 F.2d 601, 604-05 [2d Cir. 1986]).  The Second Circuit noted that "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert or preclude reliance on the guidelines." *Bapp*, 802 F.2d at 603.  Rather, the ALJ must first determine whether claimant's work capacity is significantly further diminished by the non-exertional impairment before deciding whether the Guidelines or a vocational expert is required to determine disability. *Id*.

Here, ALJ Ramos determined, as part of the calculation of Plaintiff's residual functional capacity, that "the evidence of record fails to support the degree of [non-exertional] incapacitation alleged by Claimant.  There is clearly no physical reason why claimant is unable to perform basic work activities." (T. at 16.)  Therefore, ALJ Ramos determined that Plaintiff's non-exertional impairments did not significantly diminish Plaintiff's work capacity beyond that caused by her exertional impairments.  As discussed above in Part III.C. of this Memorandum-Decision and Order, ALJ Ramos's calculation of Plaintiff's residual functional capacity is supported by substantial evidence in the record, and the Court must uphold that finding.  Thus, the application of the Medical-Vocational Guidelines was appropriate in this case.  The Court notes, however, that the applicability of the Guidelines may change if the calculation of Plaintiff's residual function capacity also changes after an extra weight analysis of Dr. Tam-Alberto's findings, as discussed in Parts III.B. and C. of this Memorandum-Decision and Order.

For these reasons, ALJ Ramos's application of the Medical-Vocational Guidelines is affirmed, subject to an extra weight analysis of Dr. Tam-Alberto's opinion, pursuant to Part III.B. of this Memorandum-Decision and Order.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED** **in part** and **DENIED** **in part**; and it is further

**ORDERED** that Defendant's cross-motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED** **in part** and **DENIED** **in part**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order.

Dated: September 12, 2012
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge